[Cite as *Bayview Loan Servicing, L.L.C. v. Humphreys*, 2021-Ohio-4324.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Bayview Loan Servicing, LLC, a Delaware Limited Liability Company, | : | |
| | : | |
| Plaintiff-Appellee, | | |
| | : | No. 20AP-396 |
| | | (C.P.C. No. 18CV-6313) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Gloria L. Humphreys | : | |
| | : | |
| Defendant-Appellant, | : | |
| | | |
| Unknown Spouse, if any, of Gloria L. Humphreys et al., | : | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

D E C I S I O N

Rendered on December 9, 2021

**On brief:** *Clunk, Hoose Co., LPA, Laura C. Infante*, and *Ashley E. Mueller*, for appellee Bayview Loan Servicing, LLC. **Argued:** *Laura C. Infante.*

**On brief:** *Kevin R. Nose*, for appellant. **Argued:** *Kevin R. Nose.*

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, P.J.

{¶ 1} Defendant-appellant, Gloria L. Humphreys, appeals the March 9 and August 21, 2020 judgment entries of the Franklin County Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Bayview Loan Servicing, LLC ("Bayview"), entering a decree of foreclosure, and denying appellant's motion for relief from judgment. For the following reasons, we reverse.

## I. Facts and Procedural History

{¶ 2} This appeal is the latest in a series of actions involving the same note and mortgage. In a prior case involving appellant and Bayview, we stated the following:

> In 1997, Boris Picalovski sold Humphreys his home, located at 7575 Riverside Drive, Dublin, Ohio, with a second mortgage taken back by Picalovski. Through a series of subsequent assignments, Bayview became the owner and holder of the first mortgage and note. Thereafter, Humphreys discovered alleged misrepresentations Picalovski made to her during the sale of the home. She and Picalovski were allegedly attempting to resolve these issues when Picalovski died in a vehicular accident in 2001. Humphreys apparently stopped paying on both the first and second mortgages.

*Picalovski v. Humphreys*, 10th Dist. No. 12AP-103, 2014-Ohio-1709, ¶ 2.

{¶ 3} The following facts relevant to the instant appeal are undisputed. As evidenced by an exhibit attached to Bayview's complaint, appellant executed a promissory note in July 1998 for $227,150 ("the note") to Ravenna Savings Bank. To secure payment of the note, appellant executed a mortgage ("the mortgage") to Ravenna Savings Bank on the property located at 7575 Riverside Drive in Dublin, Ohio ("the property").

{¶ 4} On June 30, 1999, the mortgage was assigned from Ravenna Savings Bank to First Financial Bank. On June 10, 2002, the mortgage was assigned from First Financial Bank to Ravenna Savings Bank. On March 29, 2004, First Place Bank, which on May 13, 2000 had changed its name from Ravenna Savings Bank to First Place Bank, assigned the mortgage to Empire Mortgage, LLC ("Empire"). On April 13, 2006, Empire Mortgage assigned the mortgage to Bayview. On April 13, 2006, appellant entered into a loan modification agreement with Bayview increasing the original loan amount to $235,679.98.

## A. Prior Cases

{¶ 5} As it is relevant to the disposition of the present matter, we take judicial notice of prior related cases involving the parties to this case. Pursuant to Evid.R. 201(B), a court can take judicial notice of a fact that is not subject to reasonable dispute that is "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Generally, " 'a court may take judicial notice of public court records available on the internet.' " *J.S. v. L.S.*, 10th Dist. No. 19AP-400, 2020-Ohio-1135, ¶ 21,

quoting *State v. Chairperson of the Ohio Adult Parole Auth.*, 10th Dist. No. 17AP-651, 2018-Ohio-1620, ¶ 23, citing *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, ¶ 8. *See Lane v. United States Bank, N.A.*, 10th Dist. No. 18AP-197, 2018-Ohio-3140, ¶ 10 (taking judicial notice of docket to review the trial court's ruling); *Johnson v. Levy*, 10th Dist. No. 18AP-775, 2019-Ohio-3492, ¶ 5, fn. 1.

### 1. 2007 Case

{¶ 6} On June 1, 2007, in Franklin C.P. No. 07CV-7292, Dragon Picalovski and Elizabeta Vargo, siblings of Boris Picalovski ("the Picalovski plaintiffs"), filed a complaint in the trial court for monetary damages and a decree of foreclosure, listing appellant and Bayview, as the holder of the note and mortgage, as defendants.[1] On June 28, 2007, Bayview filed an answer and cross-claim for reformation of the mortgage deed and for a decree of sale of the property. In its cross-claim, Bayview requested that "it be found to have a good and valid first lien upon the premises described in the [Picalovski plaintiffs'] Complaint" and that "the premises described in the [Picalovski plaintiffs'] Complaint be sold by the Sheriff as if upon execution and the equity of redemption of all Defendants be foreclosed, and that out of the proceeds of said sale this Defendant be paid the amount so found due it and for such other and further relief as equity entitles it to receive." (Case No. 07CV-7292 Bayview's Answer & Cross-claim at 5.) On September 8, 2008, Bayview filed a motion for default judgment on its cross-claim. On November 12, 2008, the trial court granted Bayview's motion for default judgment on its cross-claim against appellant and entered a decree of foreclosure. On December 15, 2008, the Picalovski plaintiffs filed a motion for relief from judgment from the trial court's default judgment in favor of Bayview. On May 20, 2009, the trial court filed an agreed judgment entry granting the motion for relief from the November 12, 2008 default judgment and reinstating the case.

{¶ 7} On May 24, 2010, Bayview filed a motion for leave to file default judgment and motion for default judgment on its cross-claim. On January 11, 2012, the trial court granted Bayview's motion for default judgment against appellant. On January 23, 2012,

---

[1] We note that, in 2006, the Picalovski plaintiffs filed suit in case No. 06CV-11569 listing appellant and Empire Mortgage as defendants. On May 17, 2007, the Picalovski plaintiffs voluntarily dismissed that case pursuant to Civ.R. 41(A)(1)(a).

the trial court filed an amended judgment entry granting Bayview's motion for default judgment and entering a decree of foreclosure.[2]

{¶ 8} On April 22, 2014, we reversed the trial court's default judgment on the basis of a stipulation between appellant and Bayview that Bayview's claims would not be addressed until after the claims of the Picalovski plaintiffs were resolved. *Picalovski.* We declined to address any other issues raised by appellant and remanded to the trial court for further proceedings.

{¶ 9} On January 8, 2015, the Picalovski plaintiffs dismissed their claims, resulting in only Bayview's cross-claim remaining. On July 21, 2015, Bayview's cross-claim proceeded to trial. On November 15, 2016, the trial court filed a judgment entry granting Bayview's claim for reformation of the property, but did not order foreclosure. In its decision, the trial court stated:

> At trial, Bayview sought to foreclose upon the Real Property and Defendant Gloria L. Humphreys argued that, although reformation of the legal description of the Mortgage and Deed was proper, foreclosure was inappropriate, as foreclosure was not a count included within Bayview's Cross-Claim. In response, Bayview sought to amend its pleading at trial to include a claim for foreclosure arguing that the filing of the foreclosure by the original Plaintiff constituted an event of default of the Note and Mortgage; said Motion for leave to amend was not well-taken by the Court at trial.

(Case No. 07CV-7292 Nov. 15, 2016 Jgmt. Entry at 2-3.) Bayview did not appeal from the trial court's November 15, 2016 judgment.

### 2. 2017 Case

{¶ 10} On March 21, 2017, in Franklin C.P. No. 17CV-2755, Bayview filed a complaint for foreclosure against appellant. On December 19, 2017, Bayview filed a motion for summary judgment. On January 16, 2018, appellant filed a memorandum contra Bayview's motion for summary judgment and a cross-motion for summary judgment. On March 6, 2018, the trial court filed a decision denying both Bayview and appellant's motions for summary judgment. In its decision, the trial court found "there are genuine issues of

---

[2] We note that appellant filed a notice of appeal on December 15, 2008 from the November 12, 2008 default judgment. On June 17, 2009, appellant filed a motion to voluntarily dismiss the appeal. On June 19, 2009, we dismissed the appeal.

material fact when and whether [Bayview] accelerated the Note and/or if [Bayview] abandoned acceleration of the Note.  The Court finds these are issues best addressed at trial in which the Court may resolve these factual disputes."  (Case No. 17CV-2755 Mar. 6, 2018 Entry at 3.)  On April 12, 2018, Bayview voluntarily dismissed its claims without prejudice.

**B. Present Case**

{¶ 11}  In the case before us, Bayview filed an amended complaint for foreclosure and other equitable relief on September 11, 2018.[3]  Bayview alleged in the amended complaint that by reason of default on the note and the mortgage securing the same, the unpaid sum of $232,571.04 plus accrued interest was immediately due and payable. Furthermore, according to Bayview, it had paid all property taxes in the amount of $90,671.16 from December 1, 2006 through April 30, 2018.  As a result, Bayview asserted a right to foreclosure on the property to recover the amount due and owing in addition to accrued interest, late charges, advances for taxes and insurance, and other expenditures.

{¶ 12}  On January 28, 2019, appellant filed an answer to Bayview's amended complaint.  On April 29, 2019, Bayview filed a motion for summary judgment against appellant.  On May 28, 2019, appellant filed a combined motion for summary judgment and memorandum contra Bayview's April 29, 2019 motion for summary judgment.  On March 9, 2020, the trial court filed a judgment entry granting summary judgment in favor of Bayview, denying appellant's motion for summary judgment, and decreeing foreclosure of the mortgage and sale of the property conveyed under the mortgage.

{¶ 13}  On March 20, 2020, due to the COVID-19 public health emergency, the trial court ordered all foreclosure cases stayed until May 20, 2020.  On April 23, 2020, the trial court again ordered the case stayed in accordance with the tolling order issued by the Supreme Court of Ohio.

{¶ 14}  On July 1, 2020, appellant filed a motion to vacate the March 9, 2020 judgment entry of foreclosure and the pending sheriff sale of the property scheduled for July 17, 2020.  On July 14, 2020, Bayview filed a memorandum in opposition to appellant's July 1, 2020 motion to vacate.  On August 4, 2020, the trial court ordered the stay lifted due to the expiration of the Supreme Court's tolling order.  On August 21, 2020, the trial

---

[3] We note Bayview filed its original complaint on July 24, 2018.

court filed an entry denying appellant's July 1, 2020 motion to vacate. On August 25, 2020, appellant filed a notice of appeal from the March 9 and August 21, 2020 judgment entries.[4]

## II. Assignments of Error

{¶ 15} Appellant appeals and assigns the following five errors for our review:

> [I.] THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF BAYVIEW, AND DENIED SUMMARY JUDGMENT IN FAVOR OF HUMPHREYS WITH RESPECT TO THE ASSERTED DEFENSE OF RES JUDICATA.
>
> [II.] THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF BAYVIEW, AND DENIED SUMMARY JUDGMENT IN FAVOR OF HUMPHREYS WITH RESPECT TO THE ASSERTED DEFENSE OF THE STATUTE OF LIMITATIONS.
>
> [III.] THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF BAYVIEW, AND DENIED SUMMARY JUDGMENT IN FAVOR OF HUMPHREYS WITH RESPECT TO DEFENSES PERTAINING TO [] BAYVIEW'S CLAIM INVOLVING R.C. § 323.45.
>
> [IV.] THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF BAYVIEW, AND DENIED SUMMARY JUDGMENT IN FAVOR OF HUMPHREYS WITH RESPECT TO THE FINDINGS OF THE AMOUNTS DUE AND OWING UNDER THE NOTE.
>
> [V.] THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JUDGMENT ENTRY FROM BAYVIEW'S COUNSEL WHICH GRANTED JUDGMENT IN FAVOR OF BAYVIEW, AND DENIED SUMMARY JUDGMENT IN FAVOR OF HUMPHREYS; WHICH HAD BEEN SUBMITTED BY BAYVIEW'S COUNSEL WITHOUT AN ANNOUNCEMENT BY THE TRIAL COURT UPON THE MOTIONS FOR SUMMARY JUDGMENT.

---

[4] We note the trial court's record reflects the court on August 31, 2020 granted appellant's motion to stay execution of the March 9, 2020 judgment pending appeal.

### III. Applicable Law and Standard of Review

{¶ 16} In her five assignments of error, appellant challenges the trial court's decision granting summary judgment in favor of Bayview in this foreclosure action. Upon a mortgagor's default, the mortgagee may choose among three separate and independent remedies to collect the debt secured by the mortgage: (1) a personal judgment against the mortgagor to recover the amount due on the promissory note, (2) an action in ejectment to take possession of the property, receive income from the property, with such income applied to the debt, with the property restored to the mortgagor when the debt is satisfied, or (3) an action in foreclosure. *Deutsche Bank Natl. Trust Co. v. Holden*, 147 Ohio St.3d 85, 2016-Ohio-4603, ¶ 21-24. An action in foreclosure is the enforcement of a debt obligation and the debt is established by the note. *Id.* at ¶ 27. " 'Where a promissory note is secured by mortgage, the note, not the mortgage, represents the debt.' " *Id.*, quoting *Kernohan v. Manss*, 53 Ohio St. 118, 133 (1895). Generally, a foreclosure action consists of a legal action to collect on the defaulted note combined with an equitable action to force a sale of the mortgaged property. *Nationstar Mtge. LLC v. Payne*, 10th Dist. No. 16AP-185, 2017-Ohio-513, ¶ 41.

{¶ 17} To properly support a motion for summary judgment in a foreclosure action, a plaintiff must present "evidentiary quality materials" demonstrating that: (1) it is the holder of the note and mortgage, or is a party entitled to enforce the instrument, (2) if it is not the original mortgagee, the chain of assignments or transfers of the mortgage, (3) the mortgagor is in default, (4) all the conditions precedent have been met, and (5) the amount of principal and interest due. *United States Bank Natl. Assn. v. Lewis*, 10th Dist. No. 18AP-550, 2019-Ohio-3014, ¶ 23. *See Wiltshire Capital Partners v. Reflections II, Inc.*, 10th Dist. No. 19AP-415, 2020-Ohio-3468, ¶ 30; *Nationstar* at ¶ 16. "[P]resentation of the note and mortgage documents, along with the affidavit of a loan servicing agent or employee with personal knowledge of the account, may provide sufficient evidentiary support for a summary judgment in favor of the mortgagee." *Green Tree Servicing LLC v. Asterino-Starcher*, 10th Dist. No. 16AP-675, 2018-Ohio-977, ¶ 33, citing *Regions Bank v. Seimer*, 10th Dist. No. 13AP-542, 2014-Ohio-95, ¶ 19, citing *Deutsche Bank Natl. Trust Co. v. Germano*, 11th Dist. No. 2012-P-0024, 2012-Ohio-5833. *See Holden* at ¶ 28, quoting *Washer v. Tontar*, 128 Ohio St. 111, 113 (1934) (noting that "[g]enerally, 'the promissory

note is the primary evidence of the debt' * * * and the borrower's history of payments is evidence of amounts credited to reduction of the principal, which proportionately reduce the mortgage lien").

{¶ 18} We review a decision on a motion for summary judgment under a de novo standard. *LRC Realty, Inc. v. B.E.B. Properties*, 160 Ohio St.3d 218, 2020-Ohio-3196, ¶ 11. De novo appellate review means the court of appeals conducts an independent review, without deference to the trial court's decision. *Wiltshire Capital* at ¶ 12. Summary judgment is appropriate only when the moving party demonstrates: (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997). In ruling on a motion for summary judgment, the court must resolve all doubts and construe the evidence in favor of the nonmoving party. *Premiere Radio Networks, Inc. v. Sandblast, L.P.*, 10th Dist. No. 18AP-736, 2019-Ohio-4015, ¶ 6.

{¶ 19} Pursuant to Civ.R. 56(C), the party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record demonstrating the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party cannot satisfy this initial burden by simply making conclusory allegations, but instead must demonstrate, including by use of affidavit or other evidence allowed by Civ.R. 56(C), that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Wiltshire Capital* at ¶ 13. If the moving party fails to satisfy this initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies the initial burden, the nonmoving party has a burden to respond, by affidavit or otherwise as provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Dresher* at 293; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle*, 75 Ohio App.3d 732, 735 (12th Dist.1991).

## IV. First Assignment of Error—Res Judicata

{¶ 20} In her first assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of Bayview because Bayview's foreclosure claim was barred by res judicata.

## A. Doctrine of Res Judicata

{¶ 21} In Ohio, the doctrine of res judicata includes both claim preclusion, which has historically been called estoppel by judgment, and issue preclusion, which is also referred to as collateral estoppel. *In re Ohio Power Co.*, 144 Ohio St.3d 1, 2015-Ohio-2056, ¶ 20; *State v. C.L.H.*, 10th Dist. No. 18AP-495, 2019-Ohio-3786, ¶ 15. " 'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action,' whereas issue preclusion, or collateral estoppel, 'precludes the relitigation, in a second action, of an issue that had been actually and necessarily litigated and determined in a prior action that was based on a different cause of action.' " *State ex rel. Nickoli v. Erie MetroParks*, 124 Ohio St.3d 449, 2010-Ohio-606, ¶ 21, quoting *Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.*, 81 Ohio St.3d 392, 395 (1998). In order for claim preclusion to apply, the following four elements must be met: (1) there was a prior valid judgment on the merits, (2) the present action involves the same parties or their privies as in the prior action, (3) the present action raises claims that either were or could have been litigated in the prior action, and (4) both actions arise out of the same transaction or occurrence. *Meyer v. Chieffo*, 193 Ohio App.3d 51, 2011-Ohio-1670, ¶ 13 (10th Dist.), citing *Reasoner v. Columbus*, 10th Dist. No. 04AP-800, 2005-Ohio-468, ¶ 5; *Newman v. Univ. of Dayton*, 2d Dist. No. 28815, 2021-Ohio-1609, ¶ 23, citing *Wright v. Heller*, 1st Dist. No. C-160897, 2018-Ohio-149, ¶ 22; *Daniel v. Williams*, 10th Dist. No. 13AP-155, 2014-Ohio-273, ¶ 18, citing *Dehlendorf v. Ritchey*, 10th Dist. No. 12AP-87, 2012-Ohio-5193, ¶ 12.

{¶ 22} Under claim preclusion, a prior judgment is conclusive as to all claims that either were or could have been litigated in the first action. *State ex rel. Schachter v. Ohio Public Emps. Retirement Bd.*, 121 Ohio St.3d 526, 2009-Ohio-1704, ¶ 27; *Natl. Amusements, Inc. v. Springdale*, 53 Ohio St.3d 60, 62 (1990), citing *Rogers v. Whitehall*, 25 Ohio St.3d 67, 69 (1986). " ' "The doctrine of *res judicata* requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." ' " *Brooks*

*v. Kelly*, 144 Ohio St.3d 322, 2015-Ohio-2805, ¶ 7, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995), quoting *Natl. Amusements* at 62. The doctrine of res judicata " 'promotes principles of finality and judicial economy by preventing endless relitigation of an issue upon which there was already a full or fair opportunity to be heard.' " *Daniel* at ¶ 18, quoting *State v. Jama*, 10th Dist. No. 11AP-210, 2012-Ohio-2466, ¶ 45, citing *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, ¶ 18. Res judicata "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

{¶ 23} "The main legal thread which runs throughout the determination of the applicability of *res judicata* * * * is the necessity of a fair opportunity to fully litigate and to be 'heard' in the due process sense." *Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 200-01 (1983); accord *Meyer* at ¶ 13 ("Claim preclusion * * * 'provides that a valid, final judgment rendered on the merits after a fair and full opportunity to litigate all claims bars all subsequent actions between the same parties or their privies arising out of the transaction or occurrence that gave rise to the prior action.' ").

## B. Application

{¶ 24} The record of this case and the prior actions between Bayview and appellant reflect that the 2007 case commenced when the Picalovski plaintiffs filed a complaint for damages and a decree of foreclosure against appellant and Bayview. On June 28, 2007, Bayview filed a cross-claim in the 2007 case asserting only a claim for reformation of the mortgage deed. The trial court twice granted foreclosure on the property in favor of Bayview during the 2007 case, though both decisions were ultimately vacated or reversed. After the Picalovski plaintiffs dismissed their claims, Bayview's cross-claim proceeded to trial on July 21, 2015. On November 15, 2016, the trial court filed a judgment entry granting Bayview's claim for reformation. The entry stated that, while "Bayview sought to amend its pleading at trial to include a claim for foreclosure, [the] Motion for leave to amend was not well-taken by the Court at trial." (Case No. 07CV-7292 Nov. 15, 2016 Jgmt. Entry at 3.)

{¶ 25} Bayview did not appeal the court's November 15, 2016 judgment. On March 21, 2017, Bayview filed a complaint for foreclosure against appellant which it later voluntarily dismissed without prejudice. In the present case, on September 11, 2018, Bayview filed an amended complaint for foreclosure against appellant. The trial court

ultimately granted summary judgment in Bayview's favor and issued a decree of foreclosure.

{¶ 26} We begin by noting that other courts have found that decisions denying leave to amend on the procedural ground of untimeliness did not constitute a judgment on the merits for purposes of res judicata. *See Millennium Laboratories, Inc. v. Ward*, 289 Neb. 718, 729 (2014); *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir.2000*)*. Here, the record does not reflect the trial court's reason for denying Bayview's motion for leave to amend at trial. Appellant has also not provided a transcript or statement of the record from the July 21, 2015 trial in the 2007 case. As a result, we are unable to discern the trial court's reasoning for denying Bayview's motion for leave to amend. As such, the trial court's denial of the motion for leave to amend was not a decision on the merits entitled to preclusive effect. *See Curtis* at 139 (stating that "[o]nly denial of leave to amend *on the merits* precludes subsequent litigation of the claims in the proposed amended complaint"). (Emphasis sic.) *See also Silva v. New Bedford*, 677 F.Supp.2d 367, 370 (D.C. Mass.2009) (stating that "[w]here a motion to amend the complaint to add new claims is denied, it can bar a second action asserting the same claims," but the "circumstances and reasons for denial of the motion to amend are important in deciding its preclusive effect").

{¶ 27} Therefore, under the unique facts and circumstances of this case, we cannot find that the trial court in the 2007 case rendered a valid final judgment on the merits of Bayview's foreclosure claim after having afforded Bayview a fair and full opportunity to litigate its claim. *Meyer* at 13; *Goodson* at 200-01.

{¶ 28} Accordingly, we overrule appellant's first assignment of error.

## V. Second Assignment of Error—Statute of Limitations

{¶ 29} In her second assignment of error, appellant asserts the trial court erred in granting summary judgment in favor of Bayview because the foreclosure action was barred by the statute of limitations. Specifically, appellant contends that the note was accelerated in 2007, and, as a result, the six-year statute of limitations in R.C. 1303.16(A) bars Bayview's enforcement of the note and claim for foreclosure.

{¶ 30} R.C. 1303.16(A), which governs the statute of limitations in specific contexts, provides in pertinent part as follows: "[A]n action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates

stated in the note or, if a due date is accelerated, within six years after the accelerated due date."  R.C. 2305.04, which governs recovery of real estate, provides in pertinent part that "[a]n action to recover the title to or possession of real property shall be brought within twenty-one years after the cause of action accrued."  Former R.C. 2305.06, which governs the statute of limitations for contracts in writing, provided that "an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."[5]  *See Bank of New York Mellon v. Walker*, 8th Dist. No. 104430, 2017-Ohio-535, ¶ 19.

**Date of Acceleration**

{¶ 31}  An action for a personal judgment on a promissory note is subject to the six-year statute of limitations in R.C. 1303.16(A).  *Chenault v. Deutsche Bank Natl. Trust Co.*, 10th Dist. No. 14AP-669, 2015-Ohio-1850, ¶ 18; *Brisk v. Draf Industries, Inc.*, 10th Dist. No. 11AP-233, 2012-Ohio-1311, ¶ 19, citing *Parmore Group v. G&V Invests., Ltd.*, 10th Dist. No. 05AP-756, 2006-Ohio-6986, ¶ 23.  A cause of action does not accrue thereby causing the statute of limitations to begin to run until proper notice of default and acceleration of the note.  *Walker* at ¶ 11; *Bank of New York Mellon v. DePizzo*, 11th Dist. No. 2014-T-0122, 2015-Ohio-4026, ¶ 18 (finding that "acceleration generally requires a separate act, aside from a mere failure to meet a due date, especially when there is language in the note that the lender may give notice of acceleration due to non-payment") (Emphasis omitted.); *United States Bank Natl. Assn. v. Broadnax*, 1st Dist. No. C-180650, 2019-Ohio-5212, ¶ 10.

{¶ 32}  The note provides the following terms with regard to acceleration:

> If Lender exercises the option to require immediate payment in full, Lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 day [sic] from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this security instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies

---

[5] We note that R.C. 2305.06 has been amended multiple times since the execution of the mortgage and note at issue in this case. Effective September 28, 2012, the General Assembly shortened the statute of limitations to a period of eight years. The most recent version of R.C. 2305.06, as amended effective June 16, 2021, provides a six-year statute of limitations. In both cases, the General Assembly provided that for actions governed by R.C. 2305.06 that accrued prior to the effective date of the amendments, the period of limitations shall be equal to the reduced period of limitations from the effective date of the amendment or the expiration of the period of limitations in effect prior to the effective date of the amendments. Neither party raises arguments related to the amendments to R.C. 2305.06.

> permitted by this security instrument without further notice or demand on Borrower.

(Apr. 29, 2019 Bayview Mot. for Sum. Jgmt., Ex. A ("Ex. A") at 4.) Similarly, the mortgage provides in pertinent part:

> Acceleration, Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this security instrument * * *. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this security instrument, foreclosure by judicial proceeding and sale of the property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this security instrument without further demand and may foreclose this security instrument by judicial proceeding.

(Bayview Mot. for Sum. Jgmt., Ex. B ("Ex. B") at 5.) The note provides the following with regard to notice: "Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address above or at a different address [if] I give the note holder a notice of my different address." (Ex. A at 3.) Similarly, the mortgage provides that "any notice to Borrower provided for in this security instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the property address or any other address borrower designates by notice to lender." (Ex. B at 4.)

{¶ 33} Bayview, in an attachment to its motion for summary judgment, provided the March 14, 2019 affidavit of Brian Nwabara, an employee of Bayview. In the affidavit, Nwabara stated that "in the regular performance of my job functions, I am familiar with business records maintained by Bayview * * * for the purpose of servicing mortgage loans, including this loan. * * * In connection with making this Affidavit, I have personally

examined these business records reflecting data and information as of the date of the signing of this affidavit." (Nwabara Aff. at 1.) Nwabara stated that "the records do not indicate that a notice of default was sent on this loan account prior to notice of default dated December 18, 2014." (Nwabara Aff. at 3.)

{¶ 34} In her combined motion for summary judgment and memorandum contra Bayview's motion for summary judgment, appellant provided the August 29, 2007 affidavit of Kathleen M. Sovic, which was originally filed in the 2007 case. Sovic, who was an officer at Bayview at the time of the execution of the affidavit, stated that "Defendant, Bayview * * * has exercised the option contained in said mortgage note and has accelerated and called due the entire principal balance due thereon." (Sovic Aff. at 1.) Furthermore, Sovic averred that "affiant has examined and has personal knowledge of the loan account of Gloria L. Humphreys * * * that said account is under affiant's supervision, that there is presently due a principal balance of $233,912.41 with interest thereon at the rate of 7.875% per annum from August 1, 2006, that said account has been and remains in default." (Sovic Aff. at 2.)

{¶ 35} Bayview responds that Nwabara's affidavit constituted evidence that the "affidavit filed in the 2007 case was factually incorrect and erroneous." (Bayview's Brief at 26.) Bayview claims that Nwabara's affidavit "contains testimony that Bayview's business records reflect that no notice of default was ever sent on [appellant's] loan prior to the notice sent in December of 2014." (Bayview's Brief at 26.) As a result, Bayview argues the conditions precedent to acceleration did not occur until December 2014, and, therefore, this action was timely filed. Bayview also points to a subsequent notice of default sent to appellant in 2018 as evidence that the present action was timely filed. For purposes of comparison, we examine a series of our prior decisions with similar circumstances. *See* *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 11AP-637, 2012-Ohio-4411, ¶ 18 ("*Berman I*"); *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 15AP-394, 2015-Ohio-4466 ("*Berman II*"); and *Fifth Third Mtge. Co. v. Berman*, 10th Dist. No. 17AP-563, 2019-Ohio-1068 ("*Berman III*").

{¶ 36} In *Berman I*, we found there remained a genuine issue of material fact as to whether the plaintiff complied with the terms of the note and mortgage before proceeding with foreclosure by properly providing notice of default to the defendant. We held that the copy of the default notice "supports the proposition that [the plaintiff] mailed it to a post

office box rather than the address of the subject property." *Id.* at ¶ 19. Accordingly, we reversed the trial court's grant of summary judgment in favor of the plaintiff. Following remand, the plaintiff filed a notice of dismissal pursuant to Civ.R. 41(A).

{¶ 37} Following the dismissal of its initial case, the plaintiff sent the defendant a notice of default and acceleration and again filed a complaint in foreclosure. The trial court granted summary judgment in favor of the defendant and dismissed the complaint with prejudice due to the plaintiff's failure to provide the defendant with at least 30 days to cure the default before accelerating the sums secured by the note and seeking foreclosure. In *Berman II*, we reversed the trial court's judgment and remanded with instructions for the trial court to dismiss the matter without prejudice, which the trial court did.

{¶ 38} The trial court then entered judgment for the plaintiff on its third foreclosure complaint following a bench trial. On appeal in *Berman III*, we reviewed whether the trial court erred in holding the plaintiff's third complaint was filed within the applicable statute of limitations. Importantly, we noted that the defendant failed to provide the court with a complete transcript of the bench trial, and, as a result, we were forced to " 'presume that the judgment of the trial court was valid' " with regard to its factual findings. *Berman III* at ¶ 16, quoting *New Waterford Bank v. Austin Agency*, 11th Dist. No. 94-T-5174 (Mar. 22, 1996), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). In reaching our conclusion that the trial court did not err in its determination that the action was timely filed, we stated the following:

> In light of the record on appeal, we accept the findings of the trial court that appellee's attempt to accelerate the debt in 2009 was ineffective for failure to satisfy a condition precedent, i.e., failure to provide proper notice under the agreement requiring the lender to send notice to the property address. *See, e.g., Natl. City Mtge. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, ¶ 21 (10th Dist.), quoting *First Fin. Bank v. Doellman*, 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶ 20 (" 'Where prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent.' "); *United States Bank Natl. Assn. v. Weber*, 10th Dist. No. 12AP-107, 2012-Ohio-6024, ¶ 12 (holding "proper notice of default is a condition precedent to the lender's right to accelerate and foreclose").

We also accept the trial court's findings that the second notice of default, mailed by appellee on April 8, 2013, was properly sent to appellant at his address, and appellant failed to cure the default within 30 days as required by the notice. Thus, the record supports a determination appellee complied with conditions precedent to acceleration of the loan and foreclosure following the second notice of default. As noted above, having found appellee properly accelerated the loan in 2013 when the second notice of default was sent to the property address, and appellant failed to cure the default, the trial court concluded appellee's 2016 foreclosure action was filed "well within" the applicable six-year statute of limitations under R.C. 1303.16(A). (July 10, 2017 Decision & Entry at 11.) Based on the limited record before this court on appeal, and accepting the factual findings of the trial court, we find no error with the trial court's interpretation of the relevant provisions of the note and mortgage, as well as its determination that the present action was timely filed within the applicable statute of limitations period.

*Berman III* at ¶ 35-36.

{¶ 39} Here, the terms of the note and mortgage required notice of acceleration be sent to appellant in writing. *See Natl. City Mtge. Co. v. Richards*, 182 Ohio App.3d 534, 2009-Ohio-2556, ¶ 21 (10th Dist.), quoting *First Fin. Bank v. Doellman*, 12th Dist. No. CA2006-02-029, 2007-Ohio-222, ¶ 20 (stating that " '[w]here prior notice of default and/or acceleration is required by a provision in a note or mortgage instrument, the provision of notice is a condition precedent' "); *United States Bank Natl. Assn. v. Weber*, 10th Dist. No. 12AP-107, 2012-Ohio-6024, ¶ 12; *Bank of New York Mellon Corp. v. Erickson*, 5th Dist. No. 2016CA00155, 2017-Ohio-599, ¶ 23 (finding that the complaint in foreclosure was filed within the statute of limitations period because the statute of limitations is an affirmative defense and the defendant "failed to provide Civ.R. 56 evidence that the mortgage loan was accelerated" prior to the date demonstrated by the plaintiff). The record does not reflect that any such notice was sent to appellant prior to the 2014 notice of default. Although Sovic states that Bayview "has exercised the option * * * and has accelerated and called due the entire principal balance," Sovic does not state that Bayview sent a notice of default to appellant. (Sovic Aff. at 1.) Furthermore, appellant does not provide such a notice of default or otherwise state that she received one. As a result, we cannot find there exists a genuine issue of material fact with regard to the date of

acceleration. Consistent with *Berman III* and considering that the record before us fails to demonstrate that Bayview sent a proper notice of default as required under the terms of the note and mortgage until the 2014 notice of default, we find Bayview's cause of action did not accrue until such time. As a result, Bayview's claim for foreclosure in the present matter was timely filed.

{¶ 40} Accordingly, we overrule appellant's second assignment of error.

**VI. Third and Fourth Assignments of Error—Principal, Interest, and Taxes**

{¶ 41} In her third assignment of error, appellant asserts the trial court erred by finding that, pursuant to R.C. 323.45, the amounts paid by Bayview for real estate taxes on the property constituted a lien on the real estate from the time of payment in preference to all other liens. Appellant also contests the trial court's findings as to the specific amount of property taxes paid by Bayview. In her fourth assignment of error, appellant asserts the trial court erred in granting summary judgment because Bayview failed to satisfy the fifth requirement for summary judgment in a foreclosure action, i.e., establishing the principal and interest due on the note. We first address whether Bayview has the right to recover the sums it advanced for payment of property taxes.

**A. Bayview's Claim for Property Taxes Paid**

{¶ 42} R.C. 323.45 provides as follows: "A person having a lien upon real estate may pay the taxes which are a lien thereon, and the amount paid shall be a lien upon such real estate from the time of payment in preference to all other liens. The money paid may be recovered from the person liable for the payment of the taxes." R.C. 5301.233, which governs the use of a mortgage to secure certain advances, provides as follows:

> In addition to any other debt or obligation, a mortgage may secure unpaid balances of advances made, with respect to the mortgaged premises, for the payment of taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises, if such mortgage states that it shall secure such unpaid balances. A mortgage complying with this section is a lien on the premises described therein from the time such mortgage is delivered to the recorder for record for the full amount of the unpaid balances of such advances that are made under such mortgage, plus interest thereon, regardless of the time when such advances are made.

**{¶ 43}** The mortgage contains provisions related to payment of obligations, including the following:

> 7. Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this security instrument, or there is a legal proceeding that may significantly affect Lender's rights in the property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the property and Lender's rights in the property. Lender's actions may include paying any sums secured by a lien which has priority over this security instrument, appearing in court, paying reasonable attorneys' fees and entering on the property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this Paragraph 7 shall become additional debt of Borrower secured by this security instrument, unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the note rate and shall be payable with interest, upon notice from Lender to Borrower requesting payment.

(Ex. B at 3.) Appellant, in a response to interrogatories prepared by Bayview and submitted in support of Bayview's motion for summary judgment, stated that she "[a]dmit[ted] that pursuant to the covenants and conditions of the subject Mortgage, [Bayview] may advance sums to pay real estate taxes, hazard insurance premiums, and property protection and maintenance." (Bayview's Mot. for Sum. Jgmt., Ex. L at 20.)

**{¶ 44}** With regard to Bayview's advances for property taxes, the trial court made the following findings:

> The Court finds that Plaintiff has and will from time to time advance sums for taxes, insurance and property protection. Plaintiff has the first and best lien for these amounts in addition to the amount set forth above. The Court makes no finding as to the amounts of the advances and continues same until the confirmation of sale.
>
> However, the Court does specifically find that Plaintiff paid the property taxes on the property subject to this foreclosure in the amount of $90,671.16 from December 1, 2006 to April 30, 2018.

> The Court finds that Plaintiff satisfied the existing property taxes on the property and, therefore, holds the first lien for the amount of the property taxes paid due to both equitable subrogation and O[R]C Section 323.45 with priority over all other liens, including real estate taxes of subsequent tax years owed to the Treasurer of Franklin County.
>
> The Court finds that pursuant to ORC Section 323.45, the amounts paid for real estate taxes are a lien upon the real estate from the time of payment in preference to all other liens, and said amounts are recoverable against all persons liable for the payment of the taxes.
>
> The Court finds that Defendant Gloria L. Humphreys is the person liable for the payment of taxes.
>
> The Court finds that the payment of real estate taxes in an ongoing enterprise, and that Plaintiff may continue to advance sums for the real estate taxes pursuant to ORC Section 5301.233 and ORC 323.45.
>
> The Court finds that Plaintiff has a right to foreclosure of the premises located at 7575 Riverside Drive, Dublin, Ohio 43016 to recover the real estate taxes paid in addition to its right to foreclose under the subject note and mortgage.

(Mar. 9, 2020 Jgmt. Entry at 4-5.)

{¶ 45} Appellant contends that R.C. 323.45 does not apply because the "mortgage in this case ceased upon the running of the statute of limitations upon the note." (Appellant's Brief at 48.) As previously discussed in our resolution of appellant's second assignment of error, even if Bayview is barred from seeking a personal judgment on the note by the statute of limitations, this does not control the availability of a remedy through foreclosure on the mortgage. As a result, we find no merit in appellant's argument. Similarly, we reject appellant's argument that Bayview is barred from recovering the amounts paid for property taxes by res judicata for the reasons provided in our resolution of appellant's first assignment of error. Based on the terms of the mortgage and appellant's admission, we conclude the trial court did not err in determining that Bayview could recover those sums it advanced to pay property taxes.

## B. Amount of Principal, Interest Rates, and Taxes Paid

{¶ 46} Next, we consider appellant's arguments related to the specific amounts of the principal and the interest rates thereon, and taxes paid. The court made the following findings regarding the principal and interest rates:

> The Court finds on the evidence adduced that there is due Plaintiff on the promissory note set forth in the First Count of the Complaint and Loan Modification Agreement, the sum of $232,571.04 at the rate of 3.5% per annum from December 1, 2006 through July 31, 2017, 4.0% per annum from August 1, 2017 through July 31, 2018, 5.125% per annum from August 1, 2018, and at such interest rate as may change from time to time pursuant to the terms of the note.

(Mar. 9, 2020 Jgmt. Entry at 3.)  As previously discussed, the trial court found Bayview paid property taxes in the amount of $90,671.16 from December 1, 2006 to April 30, 2018.

{¶ 47}  A review of the record, including Bayview's exhibits in support of summary judgment, reflects that Bayview submitted three account summaries in support of its motion for summary judgment.  The first account summary purported to reflect the account history from the origination of the loan through February 9, 2011.  The second account summary purported to reflect the account activity from January 1, 2011 through October 4, 2017.  The third account summary purported to reflect the account activity from October 4, 2017 through January 30, 2019.  This third and final account summary provided an escrow balance of $124,080.64 and principal balance of $232,571.04.

{¶ 48}  The first account summary showed the interest rate as 5.875 percent, whereas the second and third account summaries showed the interest rate as 7.875 percent. However, in the affidavit attached in support of summary judgment, Nwabara states that the interest rate was "3.5% per annum from December 1, 2006 through July 31, 2017, 4.0% per annum from August 1, 2017 through July 31, 2018, 5.125% per annum from August 1, 2018." (Nwabara Aff. at 2.)

{¶ 49}  The terms of the note provided that the interest rate charged was subject to change.  The terms of the April 2006 modification agreement between appellant and Empire Mortgage reflect that the modified mortgage principal balance of "$235,679.98 will be amortized over the remaining term of 264 months at the current rate of 5.875%." (Bayview's Mot. for Sum. Jgmt., Ex. H. ("Ex. H") at 1.)  The modification agreement further provided that "[t]he aforementioned interest rate and monthly payment are subject to change as per the original Adjustable Rate Note and Rider(s).  The interest rate is subject to changes as of August 1, 2006 and the monthly principal and interest payment is subject to change as of September 1, 2006."  (Ex. H at 2.)

{¶ 50} Appellant contends Bayview's payment history submitted in support of its motion for summary judgment is incomplete as there are gaps in the dates of reporting. As a result, appellant contends Bayview failed to meet the requirements for granting summary judgment in its foreclosure action. Bayview argues appellant failed to respond with Civ.R. 56 evidence of her own to refute the amount of principal and interest rates. However, Bayview's argument confuses the burdens imposed under Civ.R. 56 by failing to recognize the necessity of satisfying its own burden under Civ.R. 56 as the movant prior to the imposition of a responsive burden on appellant.

{¶ 51} As the moving party, Bayview "bears the initial burden of *demonstrating* that there are no genuine issues of material fact" by "point[ing] to evidentiary materials of the type listed in Civ.R. 56(C)." (Emphasis sic.) *Dresher* at 292. "While the movant is not necessarily obligated to place any of these evidentiary materials in the record, the evidence must be in the record or the motion cannot succeed." *Id.* at 293. Civ.R. 56(E) states that "[w]hen a motion for summary judgment is made *and supported as provided in this rule*, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." (Emphasis added.) Thus, only after "the moving party has satisfied its initial burden" does the "nonmoving party [have] a reciprocal burden" to supply evidence as provided under Civ.R. 56(E) showing a genuine issue of material fact remains for trial. *Dresher* at 293.

{¶ 52} Here, Bayview failed to supply evidence demonstrating the absence of a genuine issue of material fact on an essential element of its case, namely the amount of principal and interest due. *Huntington Natl. Bank v. Hall*, 10th Dist. No. 20AP-449, 2021-Ohio-3111, ¶ 9, citing *Lewis* at ¶ 23; *Wiltshire* at ¶ 30; *Nationstar* at ¶ 16. Such an issue exists in this case because the statements in Nwabara's affidavit concerning the applicable interest rates conflict with those in the account summary exhibit referenced by the affidavit. Bayview provides no explanation, either in Nwabara's affidavit or in its briefing, for this discrepancy. As a result, we find Bayview failed to provide evidentiary-quality materials establishing the amount of interest due on the note.

{¶ 53} Next, the account summaries do not appear to reflect a complete listing of the transactions on the account. The itemized transactions in the account summaries are listed

beginning in 2006 and the final itemized transaction is listed as being processed on January 14, 2019. The first account summary, which purportedly contains a record of transactions from 2006 through February 9, 2011, includes two entries of transactions in 2011. The second account summary, which purports to contain the history of transactions from January 1, 2011 through October 4, 2017, does not contain the record of any transactions from January 1, 2011 until September 10, 2012. The second account summary does not reflect those 2011 transactions contained in the first account summary. Although no explanation is offered for this discrepancy, neither appellant nor Bayview asserts that appellant made payments during the timeframe in question, or that the principal was otherwise reduced. As a result, we cannot find there is a genuine issue with regard to the principal due based on the discrepancies in the account summaries.

{¶ 54} Nevertheless, because Bayview failed to meet its initial burden to establish the applicable interest rates on the note, one of the requirements for granting summary judgment in a foreclosure case, we must remand this matter for the trial court to conduct further proceedings. *HSBC Bank USA, Natl. Assn. v. Webb*, 10th Dist. No. 16AP-845, 2017-Ohio-9285, ¶ 17.

{¶ 55} Finally, appellant asserts the trial court erred in the specific amounts it found Bayview had advanced for payment of property taxes on the property. Appellant asserts the trial court's findings were unsupported by the record and made without explanation or analysis. Bayview responds that it provided evidence in the form of the account summaries attached to its motion for summary judgment.

{¶ 56} Bayview argues the payment history listed in the account summaries demonstrates that "at least $124,080.64 has been advanced" under the account's escrow balance. (Bayview's Brief at 47.) However, the escrow total appears to include disbursements for items other than property tax, including homeowner's insurance premium and flood insurance. Bayview also notes the payment history contains specific instances of disbursements for county property taxes. Upon review, the sums provided in the itemized entries on the payment history from December 1, 2006 to April 30, 2018 do not appear to add up to the trial court's finding of $90,671.16 in total property tax

payments.[6] Considering the evidence in the record, we are unable to discern how the trial court reached the amount in its findings. As a result, we find a genuine issue of material fact remains with regard to the amount advanced by Bayview for payment of property taxes.

{¶ 57} Accordingly, we sustain in part and overrule in part appellant's third assignment of error and sustain appellant's fourth assignment of error.

**VII. Fifth Assignment of Error—Proposed Judgment Entry**

{¶ 58} In her fifth assignment of error, appellant asserts the trial court erred by accepting Bayview's proposed judgment entry in violation of Loc.R. 25 and Civ.R. 58. Appellant contends the trial court erred by accepting the submission of Bayview's proposed judgment entry prior to the docketing of its decision granting summary judgment.

{¶ 59} Loc.R. 25.01 of the Franklin County Court of Common Pleas provides as follows:

> Unless the Trial Judge otherwise directs, counsel for the party in whose favor a decision, order, decree, or judgment is rendered, shall within five days thereafter prepare the proper journal entry and submit it to the counsel for the adverse party, who shall approve or reject the entry within three days after receipt. Name of the counsel and of the Trial Judge shall be typed or printed upon the entry. When the entry is approved by counsel, it shall be signed and presented to the Trial Judge for approval, and if signed by the Trial Judge, shall then be filed with the Clerk. If counsel are unable to agree upon the entry, the dispute shall be submitted to the Trial Judge, who will direct what entry shall be made.

Although Loc.R. 25.01 mandates that a prevailing party must submit a proposed judgment entry within five days of the decision, nothing in this rule prohibits a party from submitting a proposed judgment entry prior to the trial court's entry of its decision on the docket. Appellant next argues the entry was required to " 'relate * * * to the motion decided and the date of the decision' " under Loc.R. 25.04(2) of the Franklin County Court of Common Pleas. (Emphasis omitted.) (Appellant's Brief at 53, quoting Loc.R. 25.04 of the Franklin County Court of Common Pleas.) However, this rule requires in pertinent part that "[a]ll entries should: (1) state the reason for the entry; *or* (2) relate the entry to the motion decided and the date of decision." (Emphasis added.) Thus, the rule does not require that

---

[6] We note that as previously discussed the account summaries appear to be incomplete or containing discrepancies from February 9, 2011 until September 10, 2012.

the entry be submitted only after the date of the decision. We find appellant's arguments with regard to Loc.R. 25 to be without merit.

{¶ 60} Appellant also points to Civ.R. 58(A)(2) in arguing the trial court erred in accepting the submission of the proposed entry. Civ.R. 58(A)(2) provides that "[a]pproval of a judgment entry by counsel or a party indicates that the entry correctly sets forth the verdict, decision, or determination of the court and does not waive any objection or assignment of error for appeal." Civ.R. 58(A)(2) applies in circumstances "[w]here the prevailing party is ordered to compose a judgment entry reflecting the trial court's decision," and the court orders the opposing party "to 'approve' that form of decree unless it failed to conform to the relief that the court had granted in its decision." *Ruben v. Ruben*, 10th Dist. No. 12AP-717, 2013-Ohio-3924, ¶ 44, quoting *Fischer v. Ramey*, 2d Dist. No. 16249 (Aug. 1, 1997).[7] As Civ.R. 58(A)(2) is irrelevant under the circumstances in this case, we find appellant's arguments to be without merit.

{¶ 61} Accordingly, we overrule appellant's fifth assignment of error.

## VIII. Conclusion

{¶ 62} Having overruled appellant's first, second, and fifth assignments of error, sustained in part and overruled in part appellant's third assignment of error, and sustained appellant's fourth assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

BROWN and LUPER SCHUSTER, JJ., concur.

─────────────

─────────────

[7] The staff notes to Civ.R. 58 explain that Civ.R. 58(A)(2) was added as a "restatement of Rule 7(B) of the Rules of Superintendence for the Courts of Ohio," which "indicates that a party's approval of a proposed judgment entry only reflects agreement that the entry correctly sets forth the decision of the court and does not constitute a waiver of any error or objection for purposes of appeal."